# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| WADE SMITH, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    CIVIL ACTION 10-0643-WS-B |
| | ) |
| NORFOLK SOUTHERN | ) |
| RAILWAY COMPANY, INC., | ) |
| | ) |
|     Defendant. | ) |

## ORDER

This matter comes before the Court on defendant's Motion to Dismiss (doc. 8). The Motion has been briefed and is now ripe for disposition.

**I.    Relevant Background.**

On October 15, 2009, plaintiff, Wade Smith, by and through counsel, filed suit in the Circuit Court of Dallas County, Alabama, against Norfolk Southern Railway Company, Inc., concerning a vehicle/train collision that had occurred on October 15, 2007. Smith maintains that Norfolk Southern's employee or servant had negligently or wantonly operated its locomotive by failing to sound the horn or brake as the train approached an intersection. As a result, the Complaint alleges, the Norfolk Southern locomotive collided with Smith's vehicle, injuring Smith. Plaintiff filed the Complaint in state court on the last day of the applicable limitations period.

After service of process, Norfolk Southern removed this action to this District Court and now seeks dismissal of the Complaint.[1] Norfolk Southern's Motion to Dismiss centers on the statute of limitations, and particularly whether the limitations period was tolled upon filing of the

---

[1]    Federal subject-matter jurisdiction is properly predicated on 28 U.S.C. § 1332, inasmuch as Smith and Norfolk Southern appear to be citizens of different states (Alabama and Virginia, respectively) and the Complaint contains a specific *ad damnum* demand for damages of $101,700, which exceeds the $75,000 jurisdictional threshold.

Complaint, given the significant delays attendant to Smith's service of process. Defendant shows that its registered agent for service of process was not served with a copy of the Complaint and Summons until October 26, 2010, a year and 11 days after the Complaint was filed. (McGivaren Aff. (doc. 13, Exh. A), ¶ 6.) The parties endeavor to explain why it took so long. In that regard, the record establishes that, when Smith filed the Complaint, he contemporaneously submitted a completed Summons, identifying Norfolk Southern's service agent and the service address, checking the box labeled "Certified Mail is hereby requested," and including plaintiff's counsel's signature in the appropriate space. (Doc. 8, Exh. 1.)[2] The state court clerk's office stamped that Summons as having been received on October 15, 2009, the very day on which the Complaint was filed. Along with this Summons, plaintiff prepared or caused to be prepared a "U.S. Postal Service Certified Mail Receipt" stamped October 14, 2009, listing defendant's service agent's name and address, and indicating a postage fee of $5.54. (Doc. 8, Exh. 3A.) Plaintiff's evidence is that he paid the full filing fee to the state court clerk's office at the time of filing the Complaint, and delivered the requisite documents to the clerk's office "for filing and service of process upon the Defendant." (Marshall Aff. (doc. 12, Exh. A), ¶ 3.) Having submitted these materials, Smith assumed that the clerk's office would send the requisite mailing to perfect service of process on defendant. For unknown reasons, that mailing apparently was never sent.

All was quiet for the next eight months, with Smith's counsel stating that he simply did not know whether Norfolk Southern had not been served with process or whether it had elected not to respond to the Summons. (Doc. 12, at 2.) On June 25, 2010, the state court entered an Order providing Smith with 60 days to perfect service or else face dismissal of the action. (Doc. 8, Exh. 2.) Plaintiff's evidence is that, upon receiving such notice, he immediately mailed a copy of the Complaint and Summons to defendant's service agent via certified mail. (Marshall Aff., ¶ 5; Doc. 8, Exh. 3, ¶ 3.) For whatever reason, that certified mailing was neither received by defendant nor returned to plaintiff. On that basis, Smith requested and received a further

---

[2] Defendant does not dispute that the October 15, 2009 Summons correctly identifies its registered agent for service of process in Alabama, as well as the proper mailing address for said agent.

enlargement of the service deadline from the state court in August 2010. (Doc. 8, Exh. 3.) Defendant was finally, properly served with process on October 26, 2010.[3]

Defendant now moves to dismiss the Complaint as untimely, reasoning that the filing of the Complaint on the last day of the limitations period did not toll such period because Smith tarried for too long thereafter before serving process on Norfolk Southern.

## II.     Analysis.

Under well-settled Alabama law, Smith's negligence claims against Norfolk Southern are subject to a two-year limitations period. *See* Ala. Code § 6-2-38(*l*) ("All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years."); *Abrams v. Ciba Specialty Chemicals Corp.*, 666 F. Supp.2d 1267, 1271 (S.D. Ala. 2009) (applying Alabama law and determining that "[t]he applicable limitations period for the negligence … claims is two years").[4] Norfolk Southern concedes that Smith filed his Complaint within (albeit on the final day of) that two-year period. Nonetheless, Norfolk Southern urges this Court to dismiss the Complaint as time-barred because plaintiff's inordinate post-filing delays in perfecting service of process mean that this action was not properly commenced until well after the October 15, 2009 limitations deadline. The undersigned finds the Motion to Dismiss not to be meritorious for two distinct reasons.

---

[3] To be clear, there is no indication that Norfolk Southern ever, at any time, obstructed or evaded service in this case. While plaintiff's counsel engages in wild speculation that defendant "readily refused service of process in this instance" or "failed to accept service of process when the process was first served" (doc. 12, ¶¶ 4, 6), there is no evidence to support that position. The record does not suggest, for example, that the U.S. Postal Service returned the original certified mailings as refused; to the contrary, defendant's uncontroverted evidence is that its registered agent (a partner in defendant's counsel's law firm) never refused to accept service on behalf of Norfolk Southern in this or any other litigation. (McGivaren Aff., ¶ 6.) The Court therefore rejects plaintiff's unsupported insinuation of impropriety on defendant's part as it relates to service of process.

[4] The Court understands that there is some dispute as to whether Smith's wantonness claims are subject to a two-year or a six-year limitations period under Alabama law. *See Ratcliff v. Heavy Machines, Inc.*, 2007 WL 2051352, *3 (S.D. Ala. July 17, 2007) (noting apparent discrepancies in Alabama authorities as to appropriate limitations period for wantonness cause of action). It is unnecessary to wade into this possibly unsettled issue of Alabama law to resolve the Motion to Dismiss; therefore, the undersigned declines to do so.

First, as a threshold matter, defendant's attempt to defeat this action on limitations grounds is premature. After all, it is well settled in this Circuit that "[a] Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred." *Brotherhood of Locomotive Engineers and Trainmen General Committee of Adjustment CSX Transp. Northern Lines v. CSX Transp., Inc.*, 522 F.3d 1190, 1194 (11th Cir. 2008) (citation and internal quotation marks omitted).[5] Nothing on the face of the Complaint would suggest that Smith's action is time-barred; to the contrary, in his initial pleading filed on October 15, 2009, plaintiff sought to hold defendant liable in negligence for events occurring on October 15, 2007. The face of the Complaint reveals no obvious limitations defect; therefore, defendant has jumped the gun by seeking Rule 12(b)(6) dismissal of this action on limitations grounds, rather than waiting until summary judgment.

Second, even if defendant's timeliness argument were properly presented as a Rule 12(b)(6) Motion, the Court finds unpersuasive Norfolk Southern's contention that Smith did not commence this action within the applicable limitations period. In that regard, the Alabama Supreme Court has explained that "[t]he filing of a complaint is … a significant factor in commencing an action and suspending the operation of the applicable statute of limitations; however, it is not the sole factor." *Ex parte East Alabama Mental Health-Mental Retardation Bd., Inc.*, 939 So.2d 1, 3 (Ala. 2006). To commence an action for statute-of-limitations purposes, Alabama law requires that the filing of the Complaint "must be made with the intention of serving process upon the opposing party or parties." *Id.* (citations omitted); *see also Precise v. Edwards*, --- So.3d ----, 2010 WL 3724755, *2 (Ala. Sept. 24, 2010) ("For statute-of-limitations purposes, the complaint must be filed *and* there must also exist a *bona fide* intent to have it immediately served.") (citation and internal quotation marks omitted); *Ward v. Saben Appliance Co.*, 391 So.2d 1030, 1035 (Ala. 1980) ("We hold that in the present case the action was not

---

[5] *See also La Grasta v. First Union Securities, Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) ("A statute of limitations bar is an affirmative defense and … plaintiffs are not required to negate an affirmative defense in their complaint.") (citation and internal marks omitted); *McMillian v. AMC Mortg. Services, Inc.*, 560 F. Supp.2d 1210, 1213 (S.D. Ala. 2008) ("A statute of limitations defense is generally not appropriate for evaluation on a Motion to Dismiss filed pursuant [to] Rule 12(b)(6), Fed.R.Civ.P."); *Abrams v. Olin Corp.*, 248 F.R.D. 283, 291 n.11 (S.D. Ala. 2007) ("Of course, the statute of limitations is an affirmative defense which plaintiffs are not required to negate in their Complaint.").

'commenced' when it was filed with the circuit clerk because it was not filed with the *bona fide* intention of having it immediately served."). Alabama authorities "indicate that a delay in serving the defendant can show the lack of intent to have the defendant served." *Precise*, 2010 WL 3724755, at *5. By contrast, "a *bona fide* intent to have an action immediately served can be found when the plaintiff, at the time of filing, performs all the tasks required to serve process." *Id.* (internal marks omitted).

So the appropriate legal standard is whether, when Smith filed his Complaint on October 15, 2009, he possessed a *bona fide* intent to have that Complaint served on defendant immediately. If he did, then this action was properly commenced on October 15, 2009, within the applicable two-year limitations period. If he did not possess that intent, however, then the mere filing of the Complaint did not suffice to commence this action or to suspend the limitations period, and Smith's negligence claims would be time-barred. Norfolk Southern insists that circumstantial evidence negates the existence of any such *bona fide* intent by Smith to have the Complaint served immediately.[6]

To apply this test, the Court finds useful the Alabama Supreme Court's 2006 opinion in *Ex parte East Alabama Mental Health*. In that case, the plaintiff provided the clerk of court

---

[6] For most of its briefing on the Motion to Dismiss, Norfolk Southern correctly focuses on the intent issue that the Alabama courts deem central to this commencement-of-action question. At the end of its Reply, however, defendant abruptly shifts gears, suggesting that even if Smith did possess the requisite *bona fide* intent to serve the Complaint promptly, such an intent "is not enough to effectively commence the action under Alabama law" without actual, immediate service. (Doc. 13, at 6.) In support of this proposition, Norfolk Southern cites only a sentence fragment from the 1980 *Ward v. Saben Appliance Co.* decision taken in isolation, distorting its meaning. While *Ward* does include the phrase "the intention is insufficient without actually doing the required act," it is plain from the context that "the required act" did not mean service of process, but rather meant the filing of the complaint. *See Ward*, 391 So.2d at 1035 ("while the intention [to commence an action] is insufficient without actually doing the required act, so also is the doing of such act without an actual, *bona fide* intention that it shall operate as a commencement of the action") (citation omitted). In other words, what is necessary is that the plaintiff both do the act (*i.e.*, file the complaint) and harbor the subjective intent to commence the action. The Alabama Supreme Court in *Ward* unequivocally stated that commencement of the action is established by the filing of the complaint coupled with the *bona fide* intention of having it immediately served. Contrary to defendant's argument, *Ward* does not hold, and cannot reasonably be construed as holding, that such *bona fide* intention is insufficient unless the plaintiff actually does serve the complaint immediately. Thus, the construction of Alabama decisional authority advocated in Paragraph 6 of defendant's Reply is misguided and unhelpful.

"with the necessary documents or information" for service of process via certified mail, and the clerk completed summonses and certified return-receipt cards and gave them to the plaintiff for mailing. The plaintiff neglected to mail them. Nonetheless, the *Ex parte East Alabama Mental Health* Court deemed the action commenced, reasoning that "the evidence suggests that [plaintiff] intended to serve process upon the defendants when he filed the complaint; he did all that was required by the Rules of Alabama Civil Procedure to facilitate service, short of placing the summonses and complaints in the mail." 939 So.2d at 5. Although the plaintiff did not actually mail the summonses and complaints for several months, the Alabama Supreme Court deemed that fact insufficient to establish lack of intent, and pointed out that the Alabama Rules of Civil Procedure "contemplate[] that the clerk will mail the summonses and complaints," not the plaintiff. *Id.*; *see also Eufaula Drugs, Inc. v. Tmesys, Inc.*, 432 F. Supp.2d 1240, 1247 (M.D. Ala. 2006) (explaining that in Alabama courts, "primary responsibility to prepare a summons, to prepare a certified mail card, and to pay the postage rests with the clerk of the court"); Rule 4(i)(2)(B)(i), Ala.R.Civ.P. (outlining procedure by which clerk performs service by certified mail).[7]

Smith's position in this case appears even stronger than that of the plaintiff in *Ex parte East Alabama Mental Health*. Upon filing the Complaint, Smith provided the clerk with the necessary information for service of process upon Norfolk Southern's agent for service of process, submitted a signed summons requesting service by certified mail, and provided a certified mail receipt to the clerk's office. In doing so, Smith appears to have taken all steps required by the Alabama Rules of Civil Procedure for immediate service of process, and to have "relied on the Clerk's office to perfect service" (doc. 12, at 4 n.2).[8] There is no evidence that the

---

[7] The Court understands that local procedures in particular circuit courts may shift mailing responsibilities to the plaintiff; however, the parties do not identify any such local practice, rule or custom applicable to the Circuit Court of Dallas County.

[8] Defendant suggests that plaintiff's counsel is being untruthful on this point, and identifies a filing in state court in which plaintiff's counsel stated that "Plaintiff timely filed a complaint against the defendant and attempted service on the day of filing." (Doc. 8, Exh. 3, ¶ 1.) While defendant interprets this statement as meaning that Smith did <u>not</u> rely on the clerk's office to serve process, but instead handled the certified mailing himself, the phrase "attempted service" is ambiguous and reasonably supports other interpretations. The Court finds no obvious contradiction between plaintiff's previous assertion that he "attempted service" upon filing the Complaint and his present representation that he relied on the clerk's office to perfect service by (Continued)

clerk's office issued the summonses and certified mail cards to him for mailing, much less that he simply failed to mail them. There is no evidence that he instructed the clerk's office not to proceed with service via certified mail. There is no evidence that he sandbagged, obstructed, or otherwise interfered with service of process in any way. Rather, by all appearances, when Smith filed the Complaint, he followed the procedures outlined in Rule 4(a)(5), Ala.R.Civ.P., and fully anticipated that the clerk's office would promptly send out the certified mailing to defendant's registered agent. For reasons not specified in the record, that mailing appears not to have happened. Indeed, defendant's evidence is that the October 15 certified mailing was never sent, and the article bearing that receipt number was never received into the U.S. Postal Service system for delivery. (Allison Aff. (doc. 8, Exh. 4), ¶ 5.) The critical point, however, is not that service of process did not happen immediately, but that there is no indication that deliberately obstructionist or dilatory conduct by plaintiff was responsible for that omission.[9]

Also telling is plaintiff's reaction to learning that defendant had not been served. Upon being notified by the state court in June 2010 that service of process had not been perfected on defendant, plaintiff's evidence is that plaintiff's counsel's office manager mailed a copy of the Summons and Complaint to Norfolk Southern's registered agent for service of process that very

---

certified mail. After all, it can reasonably be said that one "attempts service" by providing the requisite materials to the clerk's office for it to perform service duties conferred upon it by the Alabama Rules of Civil Procedure.

[9] Even in the light most favorable to the defendant, these circumstances do not reasonably suggest that Smith sought to squelch service of process on Norfolk Southern. Otherwise, why would Smith have provided the registered agent's correct name and address to the clerk's office, submitted a completed summons with the "certified mail" box checked, and prepared a certified mail receipt? Those are not the actions of a plaintiff seeking to sabotage or delay service. Rather, at most, it appears that there was some miscommunication or misunderstanding between plaintiff's counsel and the clerk's office, such that each expected the other to send out the certified mail packet to defendant, with neither one actually doing it. While Smith may well bear culpability for that communication mix-up, there is absolutely no reason to believe that he engaged in such conduct as an empty charade to conceal a desire not to serve process on the defendant immediately. He simply thought the clerk's office would serve the certified mailing on defendant, as provided by Rule 4(i)(2)(B)(i), and provided the clerk's office with all necessary information and documents to bring about that result. Such conduct is fully consistent with, and indeed evinces, a *bona fide* intent to serve process on the defendant immediately.

day. (Marshall Aff., ¶ 5.) For whatever reason, again, that mailing was never received by defendant, nor returned to plaintiff. Nonetheless, the central point remains that, immediately upon learning in June 2010 that there had been no service of process, plaintiff acted promptly and in good faith to remedy the omission in a manner that exhibited a *bona fide* intent to serve the defendant.[10]

Finally, when plaintiff requested and received an enlargement of time for service of process in August 2010, the attendant delays appear to be the product of confusion rather than dilatoriness. At that time, plaintiff's counsel knew that defendant had not been served with process, despite its efforts to do so in June 2010 by sending a mailing to the properly identified registered agent. Plaintiff's counsel must have known at that time that this mailing had neither been returned as undeliverable nor yielded a signed receipt confirming its delivery. The status was simply unknown. It is understandable that counsel faced with such a dilemma would question the veracity of his registered agent information or the defendant's willingness to accept service, and that he would request additional time to undertake to conduct further research to locate the defendant. This is exactly what plaintiff's counsel did and exactly why he requested and received an extension in August 2010. To be sure, it turned out that plaintiff had the correct registered agent identification and mailing information all along and that the agent was perfectly willing to accept service. But counsel did not know that at the time of requesting the extension. Again, this course of conduct may evince less-than-exemplary internal procedures,

---

[10] Defendant impugns plaintiff's lack of diligence in following up on the status of service of process during the intervening months. To that end, defendant shows that plaintiff could have inquired of the U.S. Postal Service as to the status of the certified mail envelope, and would have learned upon such inquiry that the Postal Service lacked any record of that package ever being received into its system. (Allison Aff., ¶ 9.) But Norfolk Southern cites no authority for the proposition that a plaintiff's failure to follow up after providing all necessary information to the clerk's office to serve process by certified mail is proof that, at the time of providing such information, the plaintiff lacked a *bona fide* intent for the defendant to be served. In the Court's view, it is far more probative of intent that Smith did everything necessary under the Alabama Rules of Civil Procedure to bring about service of process by certified mail at the time of filing his Complaint, than that he did not subsequently double back to check on the status of service as diligently as he might have.

communications, and follow-up by plaintiff's counsel, but it does not establish a lack of *bona fide* intent to serve process on defendant.[11]

The cases on which Norfolk Southern relies are readily distinguishable. For example, in *Ward v. Saben Appliance Co.*, the plaintiff was found to lack the requisite intent to have the complaint served immediately where his attorney "directed the clerk to withhold personal service until he could obtain additional information on the case." 391 So.2d at 1031. No such directive was made here. In *De-Gas, Inc. v. Midland Resources*, 470 So.2d 1218 (Ala. 1985), the requisite intent was likewise deemed absent where the plaintiff failed to pay the applicable filing fee, thereby "not only caus[ing] service to be withheld but effectively preclud[ing] *any* action by the clerk's office necessary to actually set the case in motion." *Id.* at 1222. Here, by contrast, Smith paid the filing fee and took steps reasonably calculated to facilitate, rather than preclude, the clerk's office setting the case in motion and perfecting service of process. And in *Pettibone Crane Co. v. Foster*, 485 So.2d 712 (Ala. 1986), the plaintiff lacked a *bona fide* intent to proceed with the action where he failed to provide the clerk's office with the defendant's address or any instructions concerning service of process. *Id.* at 714 ("Here the plaintiff did not include [defendant]'s address, did not indicate that it was presently unknown, and did not otherwise provide any instructions for service of process."). In this case, of course, Smith not only provided the clerk's office with the defendant's registered agent's name and address, but also specifically requested service of process by certified mail and furnished the clerk's office with appropriate forms to aid in that endeavor, all contemporaneously with the filing of the complaint. Unlike *Pettibone Crane*, which turned on the fact that "[t]he circuit clerk could not have immediately begun the process of service" with the information provided, *id.*, the clerk's office

---

[11] In so concluding, the Court does not accept plaintiff's argument that the state court's granting of the extension in August 2010 under Rule 4(b), Ala.R.Civ.P., somehow immunizes him from limitations review in this forum. This contention improperly conflates disparate concepts that Alabama courts have kept separate. *See Precise*, 2010 WL 3724755, at *5 (where lower court dismissed plaintiffs' complaint based on their "failure to commence the action for statute-of-limitations purposes[,] Rule 4(b) is immaterial to this analysis"). Stated differently, by affording Smith additional time to perfect service of process under Rule 4(b), the state court was not making any determinations as to limitations or commencement of the action, nor was it foreclosing Norfolk Southern from interposing objections on that basis at a later date.

in Smith's case certainly could have done so.[12]  Thus, this case cannot reasonably be analogized to *Ward*, *De-Gas*, and *Pettibone*, the three principal cases on which defendant's Motion to Dismiss relies.  (Doc. 8, ¶ 6.)

### III. Conclusion.

Undoubtedly, mistakes were made in serving process on Norfolk Southern.  Had plaintiff's counsel been more attentive or thorough, these delays could have been greatly reduced.  Under applicable law, though, whether counsel performed commendably is not the proper question for purposes of ascertaining when an action commences for limitation purposes.  The commencement inquiry is not an exercise in grading plaintiff's counsel's communication and follow-up practices, but is instead an examination of whether the plaintiff harbored a *bona fide* intent to have the action immediately served at the time he filed his complaint.  The weight of the evidence and argument strongly supports the existence of such intent here.  Indeed, the record shows that Smith did everything required by the Alabama Rules of Civil Procedure for service of process at the time of filing the Complaint.  This fact is important.  The Alabama Supreme Court has explained that "a *bona fide* intent to have an action immediately served can be found when the plaintiff, at the time of filing, performs all the tasks required to serve process."  *Precise*, 2010 WL 3724755, at *5 (internal brackets and quotation marks omitted).  That is just what Smith did.

To be sure, service of process was delayed for a prolonged period of time because of a series of miscommunications, errors, and omissions, many of which appear to rest on plaintiff's counsel's shoulders.  Notwithstanding that fact, the circumstances as a whole are consistent with a *bona fide* intent to serve the Complaint immediately upon its filing.  There is a total failure of proof of the sort of intentional, willful efforts to prevent, frustrate or delay service of process that are found in the cases cited by Norfolk Southern.  To grant defendant's Motion to Dismiss would be to revise Alabama's legal landscape on commencement of an action for limitations purposes, effectively elevating the quality of plaintiff's service efforts (rather than its intent as manifested by the existence of such efforts) to the forefront of the analysis.  This the Court will not do.  *See*

---

[12] Given these glaring, highly material factual differences (which are highlighted in defendant's own exhibits), Norfolk Southern's representation to this Court that this action is "remarkably similar" to *Pettibone Crane* is difficult to fathom.  (Doc. 13, ¶ 5.)

*generally Eufaula Drugs*, 432 F. Supp.2d at 1248 ("In sum, only in limited circumstances has the Alabama Supreme Court dispositively inferred that a plaintiff did not intend to immediately serve a complaint. Because none of those circumstances are present here, this court could not categorically make such an inference without significantly altering Alabama law on this subject.")

For all of these reasons, the Motion to Dismiss (doc. 8) is **denied**. The parties are **ordered** to file their Report of Parties' Planning Meeting on or before **February 18, 2011**, as directed by Magistrate Judge Bivins' Order (doc. 11) entered on January 12, 2011. Also, plaintiff is **ordered** to file a responsive pleading to defendant's Counterclaim (doc. 3) on or before **February 22, 2011**.

DONE and ORDERED this 8th day of February, 2011.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE